[Crim. No. 4128.   Second Dist., Div. Two.   Oct. 8, 1947.]

THE PEOPLE, Respondent, v. ERNEST OGANESOFF, Appellant.

Gladys Towles Root for Appellant.

Fred N. Howser, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

McCOMB, J.—After trial before the court without a jury defendant was found guilty of (1) three counts of forcible rape and (2) kidnaping. From each of the judgments he appeals.

The evidence being viewed in the light most favorable to the People (respondent) and pursuant to the rules set forth in *People* v. *Pianezzi*, 42 Cal.App.2d 265, 269 [108 P.2d 732], the essential facts are:

At about 11:15 p. m. on August 30, 1946, Mrs. Allgood left the Vets Club in Gardena with defendant, who had offered to take her home. They entered defendant's small truck and started driving toward Torrance. As they approached 182d Street defendant told her that he was going to take her over to his house to have a drink. She replied that she did not want a drink and a tussle ensued between

them, during which she grabbed the steering wheel of the truck. Defendant hit her and told her to leave the car alone, and then drove to his house. There Mrs. Allgood stated to defendant that she was not going to get out of the automobile. After some fighting she got out of the truck and started to scream and yell, whereupon defendant hit her in the face and broke her glasses. Mrs. Allgood started to cry and defendant kicked her. Finally they went into the house and defendant removed his clothing and told Mrs. Allgood that he was going to have intercourse with her. He had a knife with a blade about 5 inches long and informed her that if she did not take off her clothing he would kill her. They argued for some little time and the complaining witness told defendant that she was ill. He let her put on her shoes and stockings and they went outside together. When she was outside of the house she started to run across a field and endeavored to hide in a row of corn, but defendant found her and took her back into the house and made her go to bed and had an act of sexual intercourse with her.

Subsequently defendant had another act of intercourse with Mrs. Allgood. During both acts defendant threatened the prosecuting witness with a knife which he had in his hand. Both acts of sexual intercourse were against her will and while she was in fear of defendant. Following the acts, defendant drank a large quantity of whisky and fell asleep, whereupon Mrs. Allgood left the house and encountered Mr. Wartanian and asked him to take her to the police. He replied that it would cause him trouble so he took her to her home. The following day Mrs. Allgood reported the entire matter to the Gardena police, who told her that the case was out of their jurisdiction and should be reported to the Torrance Police Department.

On September 29, 1946, Mrs. Georgia L. Eaton was in the Skylight Cafe in Compton with three friends, a man and two women. As the cafe was about to close defendant, who was in the company of a young man named Johnnie Elsen, asked her to dance. She danced and then had a drink with defendant. Johnnie Elsen then stated to her that since there was not enough room in the truck in which Mrs. Eaton's friends were riding to accommodate her, he would drive her to the Famous Cafe, where her friends were going. Defendant joined Mrs. Eaton and Johnnie Elsen, Mrs. Eaton sitting between the two on the seat of the car. Elsen, who was driv-

ing the car, started in the opposite direction from Compton, and when she asked them where they were going they said they were taking her to another dance. She stated that she did not want to go to another dance and said she wanted to go home. Instead, the car was driven to defendant's house. When they reached the house, Johnnie Elsen, contrary to the prosecuting witness's desires, carried her into it while defendant unlocked the door.

Inside the house Mrs. Eaton pleaded with Elsen and defendant not to harm her. After having a couple of drinks Elsen picked up the prosecutrix and threw her on the bed. Defendant held her arms while Elsen removed his clothing and had an act of intercourse with her, telling her not to make a rumpus or scream because no one would hear her and that they had killed people before and they could just as easily kill her.

Each man in turn had two acts of intercourse with the prosecutrix. Thereupon Elsen left the house and defendant went to sleep. As soon as defendant had gone to sleep Mrs. Eaton arose, left the house and went to an adjacent home, where she rang the doorbell, and upon being admitted called the Torrance police. Upon arrival of the police they went to defendant's house, where they found him asleep. They recovered Mrs. Eaton's earrings and some of her clothing.

■ *Defendant urges reversal of the judgments of guilty on the sole ground that there is not any substantial evidence to sustain them for the reason that the evidence is inherently improbable.*

This proposition is totally devoid of merit. An examination of the record discloses evidence to sustain a finding of each and every fact set forth above. From such facts the trial court was thoroughly justified in finding:

First: That on three separate occasions defendant forcibly and without their consent had sexual intercourse with women to whom he was not married, and that such intercourse was accomplished by placing them in fear of bodily harm. (This finding sustains the judgment of guilty on three counts of forcible rape.)

Second: That defendant had aided and abetted Johnnie Elsen in forcibly carrying Mrs. Eaton from the car in which she was riding into defendant's home, contrary to her wishes. (This finding sustains the judgment of guilty of kidnaping.)

712

(*People* v. *Arechiga*, 72 Cal.App.2d 238, 239 [164 P.2d 503].) *People* v. *Headlee*, 18 Cal.2d 266 [115 P.2d 427], *People* v. *Ardaga*, 51 Cal. 371, *People* v. *Benson*, 6 Cal. 221 [65 Am.Dec. 506], *People* v. *Hamilton*, 46 Cal. 540, *People* v. *Hardin*, 37 Cal. 258, each relied on by defendant, are factually distinguishable from the instant case. None of these cases lend any support to defendant's contention that the evidence before the trial court in the present case was inherently improbable.

The judgments are affirmed.

Moore, P. J., and Wilson, J., concurred.