455 P.2d 844

**STATE** of New Mexico, Plaintiff-Appellee,

v.

**Elsie CLARK, Jr., Defendant-Appellant.**

**No. 8792.**

Supreme Court of New Mexico.

June 16, 1969.

Atwood & Malone, Paul Cooter, Robert E. Sabin, Roswell, for appellant.

Boston E. Witt, Atty. Gen., David R. Sierra, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

MOISE, Justice.

Petitioner here seeks review of the decision of the Court of Appeals affirming his conviction of the crime of kidnapping. Jurisdiction is asserted because of two claimed errors in the opinion, viz.,

(1) That the kidnapping statute (§ 40A–4–1, N.M.S.A.1953) under which petitioner was convicted is unconstitutional in that it permits conviction of kidnapping, a capital or second degree felony, for the identical conduct that constitutes false imprisonment (§ 40A–4–3, N.M.S.A.1953), a fourth degree felony. State v. Chavez, 77 N.M. 79, 419 P.2d 456 (1966); and

(2) That petitioner's constitutional rights were infringed at the trial, when, over objection, the victim was permitted to point out the petitioner as her assailant without it having first been established that the identification was not tainted by illegal and improper methods theretofore utilized, assertedly contrary to the holding in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

The facts are adequately set forth in the opinion of the Court of Appeals, 80 N.M. 91, 451 P.2d 995 (1969), and will not be repeated here, except as required.

The material part of § 40A–4–1, reads as follows:

"Kidnaping is the unlawful taking, restraining or confining of a person, by force or deception, with intent that the victim be held for ransom, as a hostage, confined against his will, or to be held to service against the victim's will."

For purposes of the discussion to follow, § 40A–4–3, supra, is also quoted. It provides:

"A. False imprisonment consists of intentionally confining or restraining another person without his consent and

with knowledge that he has no lawful authority to do so."

We first consider the relationship of these statutes to each other. Petitioner argues that § 40A–4–1, supra, is ambiguous in that it is not clear as to whether there must be intent (1) to hold the victim against his will for ransom and as a hostage, or (2) to service against his will; or to hold either (a) for ransom, or (b) as a hostage, or (c) against his will, or (d) to service against his will. He takes the position that the more reasonable interpretation would be the first alternative, that the holding must be for ransom, as a hostage against his will, or that the holding must be to service against his will. The statute would thus be given a restrictive operation more closely approximating "kidnapping" as that term is generally understood.

Further, it is argued that if nothing more is required than unlawful restraining or confining by force with intent that confinement be against the will of the victim, the acts prohibited are no different than those comprising the crime of false imprisonment, a lesser offense, and, under the doctrine of State v. Chavez, supra, a denial of equal protection of the laws would result when the prosecuting officials, in their sole discretion, choose to prosecute for kidnapping when they could charge with false imprisonment under the identical facts.

■ The Court of Appeals concluded that the two statutes were distinguishable on the basis that while both require an intent to confine, the kidnapping statute requires that it be by force or deception, while the false imprisonment statute has no such requirement. We cannot agree for we doubt that, in any instance, a person can be intentionally confined or restrained without his consent absent some measure of force or deception. Neither are we persuaded that "force" should be construed to mean violent or deadly force, as might be suggested. It could not have been the legislative intention to so limit the statute, for, many kidnappings are accomplished by the use of only minimal force, as, for example, where a child is abducted.

■ As we have said many times, in interpreting ambiguous statutes we should strive to find the legislative intent, and words may be added only to that end or to avoid absurdity. State v. Nance, 77 N.M. 39, 419 P.2d 242 (1966); State v. Ortiz, 78 N.M. 507, 433 P.2d 92 (Ct.App.1967). We also recognize the rule which requires that penal statutes be strictly construed. State v. Bell, 78 N.M. 317, 431 P.2d 50 (1967); State v. Buford, 65 N.M. 51, 331 P.2d 1110, 82 A.L.R.2d 787 (1958). When these rules are considered, together with the additional principle that statutes passed at the same session of the legislature and pertaining to the same subject matter be construed as in pari materia, with both to be given effect if reasonably possible to do so, State v. Chavez, supra; State v. Fidelity & Deposit Co. of Maryland, 36 N.M. 166, 9 P.2d 700 (1932); State v. Marcus, 34 N.M. 378, 281 P. 454 (1929), we are brought to the conclusion hereinafter set forth.

While we fully appreciate that statutory expression often departs from generally accepted rules of English composition, 2 Sutherland, Statutory Construction 391, § 4906 (3rd Ed.1943), we believe that recognition of certain rules of grammar may be helpful. In this connection, it must be understood that commas may be used to enclose as well as to separate. See Roberts, Harris & Johnson, A Handbook of English (1944). These two different uses are otherwise described as "parenthetical" commas and "serial" commas. See Walsh, Plain English Handbook (1959); Strunk and White, The Elements of Style (1959).

■ Applying both the rules for statutory construction and those applicable to English composition to § 40A–4–1, supra, we are able to arrive at a meaning for the language "confined against his will" which permits giving effect to both § 40A–4–1, supra, and § 40A–4–3, supra, and which, in our opinion, at the same time, reflects what must have been intended by the legis-

lature. We conclude that the section should be read:

Kidnapping is the unlawful taking, restraining or confining of a person, by force or deception with intent that the victim be held for ransom and confined against his will.

Also:

Kidnapping is the unlawful taking, restraining or confining of a person by force or deception with intent that the victim be held as a hostage and confined against his will.

Also:

Kidnapping is the unlawful taking, restraining or confining of a person by force or deception with intent that the victim be held to service against the victim's will.

■■ When read in this manner it is seen that there must be an intent to confine against the victim's will when he is taken, restrained or confined with intent that he be held for ransom, or as a hostage, but it is not necessary that he be confined against his will when the purpose of the taking, restraining or confining is that the victim be held to service against his will. Merely to confine or restrain against a person's will without the requisite intention is not kidnapping. Compare State v. Olsen, 76 Utah 181, 289 P. 92 (1930). This is false imprisonment under § 40A–4–3, supra, when done with knowledge of an absence of authority. Such a reading is permitted by virtue of the placement of the phrase "confined against his will" and because of its enclosure in commas. When we add to this the considerations that dictate that, if possible, the statute should be given an interpretation that would permit it to stand along with Sec. 40A–4–3, supra, as well as considerations of reason and common sense which accord with the evident intent and purposes sought to be attained by the legislature, we are convinced that our reading of the language is correct. See Comment, A Rationale of the Law of Kidnapping, 53 Colum.L.Rev. 540 (1953).

Sutherland, in his work on Statutes and Statutory Construction, § 4918, Vol. 2, p. 423, calls attention to the rule of *reddendo singula singulis*. We quote:

"Where a sentence contains several antecedents and several consequents they are to be read distributively. That is, the words are to be applied to the subjects to which they appear by context most properly to relate and to which they are most applicable. This method of limiting the effect of expressions which are obviously too wide to be construed literally is most frequently applied when the opening words of a section are general and the succeeding parts regulate particular instances. Thus, where several words importing power, authority, and obligations are found at the commencement of a clause, it is not necessary that each of the words apply to the several branches of the clause. It may be construed *reddendo singula singulis* and the words giving power and authority limited to particular subjects and those of obligation applied to others."

For application of the rule in a criminal case see Commonwealth v. Barber, 143 Mass. 560, 10 N.E. 330 (1887), and for its application in a recent civil case, see Mutual Federal Savings and Loan Ass'n of Milwaukee v. Savings and Loan Advisory Committee, 38 Wis.2d 381, 157 N.W.2d 609 (1968).

■■ When we consider the record in this case in the light of the statute as interpreted above, we find a total absence of proof of intent as required by the statute. Compare State v. Craig, 70 N.M. 176, 372 P.2d 128 (1962). It could not be concluded that the defendant intended to hold his victim for ransom or as a hostage, or to service against her will. Indeed, there would be no way under the proof elicited to conclude what was intended except through assumption or speculation. We fully recognize the rule that intent, as an element of crime, is seldom susceptible of proof by direct evidence, and that it may be inferred

from a series of acts, occurrences and circumstances. Rice v. United States, 149 F. 2d 601 (10th Cir. 1945). Here, however, we find neither direct evidence nor proof of acts, occurrences or circumstances which could serve as support for an inference of intent to hold for ransom or as a hostage, or to service against her will. Under the circumstances, the finding of guilt cannot stand.

Although appellant presents a second point, in view of our conclusion that the case must be reversed for the reasons stated, we find no need to discuss it.

The decision of the Court of Appeals is reversed, and the cause remanded to it with instructions that it reverse the judgment and sentence of the district court and remand the case with instructions to discharge the defendant from the crime charged.

It is so ordered.

NOBLE, C. J., and WATSON, J., concur.

COMPTON and TACKETT, JJ., dissenting.

TACKETT, J. (dissenting).

The defendant was convicted in the lower court by a jury of his peers as a result of the evidence and under the instructions of the law of the case and without doubt the jury found the element of intent, which is necessary under our kidnapping statute.

I am unable to concur in the majority opinion as, in my view, the wrong construction has been placed on the kidnapping statute in the interpretation in the majority opinion. Section 40A–4–1, N.M.S.A., 1953 Comp., reads as follows:

"Kidnaping is the unlawful taking, restraining or confining of a person, by force or deception, with intent that the victim be held for ransom, as a hostage, confined against his will, or to be held to service against the victim's will."

The majority interprets this statute to the effect that in a kidnapping case the victim must be held for ransom, or as a hostage, or held to service against the victim's will. It is my considered opinion that kidnapping can occur in instances where the victim is not held for ransom, or as a hostage, but instead is held to service against his will. The majority does apparently admit that a kidnapping can occur in this manner, but does not agree that the facts here present constitute kidnapping.

In my view, all of the necessary elements of kidnapping are present in the case before us: (1) There was an unlawful taking (she was moved under force from the point where she was first accosted to another place); (2) she was restrained against her will; (3) force was used (a knife at her throat); (4) she was made to serve against her will (the defendant indicated a car nearby and told complainant to get in; he moved her toward the car and, at this point, she managed to escape).

Just how the majority can arrive at the conclusion that these facts do not constitute kidnapping under our statute is difficult to believe. Perhaps the majority would prefer to have the situation become more aggravated at the peril of the victim before they could find kidnapping.

In State v. Ayers, 198 Kan. 467, 426 P. 2d 21 (1967), it is said:

"* * *. '[K]idnap' means to take and carry away any person by unlawful force or fraud and against his will. We attached no other requirements such as a minimum distance of asportation. It is the fact, not the distance, of forcible removal of the victim that constitutes kidnapping. 1 Am.Jur.2d, Abduction and Kidnapping, § 18, p. 172. See, also, People v. Wein, 50 Cal.2d 383, 326 P.2d 457, cert. den. 358 U.S. 866, 79 S.Ct. 98, 3 L. Ed.2d 99, reh. den. 358 U.S. 896, 79 S.Ct. 153, 3 L.Ed.2d 122 (any distance sufficient); People v. Loignon, 160 Cal.App. 2d 412, 325 P.2d 541 (opening door of automobile and pulling child into car); People v. Oganesoff, 81 Cal.App.2d 709, 184 P.2d 953 (forcibly carrying victim from automobile into defendant's house).

"In 51 C.J.S. Kidnapping § 1(8), p. 438, the rule is stated:

'Where the gravamen of the crime is the carrying away of the person, the place from or to which the person is transported is not material, and an actual asportation of the victim is sufficient to constitute the offense without regard to the extent or degree of such movement. * * *'"

See also, State v. Lowry, 263 N.C. 536, 139 S.E.2d 870 (1965); and State v. Lacoshus, 96 N.H. 76, 70 A.2d 203 (1950).

I do not have any difficulty with the identification question under the circumstances of this case, as the complainant identified the defendant from mug shots shown to her the next morning after the offense was committed and also identified him in the courtroom.

In my opinion, the decision of the Court of Appeals should be affirmed. Therefore, I respectfully dissent.

COMPTON, J., concurs.